IN THE UNITED STATES DISTRICT COURT FOR THE
EASTERN DISTRICT OF VIRGINIA

Alexandria Division

| | | |
|---|---|---|
| UNITED STATES OF AMERICA | ) | |
| | ) | |
| v. | ) | Criminal No. 1:19-CR-116 (LO) |
| | ) | |
| MICHAL J. CARNEY, | ) | |
| | ) | |
| Defendant. | ) | |

## STATEMENT OF FACTS

The United States and the defendant, MICHAEL J. CARNEY, stipulate that the allegations in the one-count criminal information and the following facts are true and correct and that, had the matter gone to trial, the United States would have proven them beyond a reasonable doubt with competent and admissible evidence.

A.  **Background**

1. Union A was a large airline pilot union that was headquartered in Herndon, Virginia, in the Eastern District of Virginia.

2. Defendant MICHAEL J. CARNEY ("CARNEY") was a resident of Ashburn, Virginia, in the Eastern District of Virginia. CARNEY was employed by Union A, where he managed Union A's Real Estate / Facilities Department. Among other things, CARNEY supervised other employees; oversaw the daily maintenance of an office building that Union A owned in Herndon, Virginia; negotiated contracts and work agreements, and supervised contractors that provided janitorial, electrical, plumbing, security, pest control, elevator maintenance, and heating, ventilation, and air conditioning ("HVAC") services.

3. COMPANY A was a HVAC and plumbing contractor located in Maryland. Union A retained COMPANY A starting in or about mid-2002.

4. Beginning in or about April 2013, CARNEY oversaw the replacement of four exhaust fans and an air conditioning unit at Union A's headquarters in the Eastern District of Virginia. CARNEY recommended COMPANY A to perform the work. Union A paid COMPANY A approximately $146,932 pursuant to an agreement signed by CARNEY. CARNEY also oversaw the bidding process for a maintenance agreement awarded to COMPANY A in or about June 2014.

5. HOWARD W. JANOSKE was COMPANY A's co-owner and president, PERSON B was JANOSKE's administrative assistant at COMPANY A, and PERSON C was a project manager and estimator for COMPANY A.

**B.** **The Scheme to Defraud**

6. Beginning no later than in or about May 2012 and continuing thereafter until at least in or about mid-2015, in the Eastern District of Virginia and elsewhere, the defendant, MICHAEL J. CARNEY, JANOSKE, PERSONS B-C, and others conspired: (a) to devise and intend to devise a scheme and artifice to defraud and deprive Union A and its members of their right to the honest and faithful services of CARNEY, a Union A manager, representative, and head of a Union A department, through bribes and kickbacks and the concealment of material information, and to cause wire communications to be transmitted in interstate commerce for the purpose of executing such scheme; and (b) to embezzle, steal, and unlawfully and willfully abstract and convert to CARNEY's own use and the use of another, the moneys, funds, securities, property, and other assets of Union A, a labor organization engaged in an industry affecting commerce, while CARNEY was employed by Union A.

7. The objects of the conspiracy included: (a) to defraud and convert to the personal use of the conspirators and others money and property belonging to Union A and its members;

(b) to deprive Union A and its members of their right to the honest and faithful services of CARNEY, a Union A manager, representative, and head of a Union A department; (c) to enrich the conspirators and others by obtaining and retaining money and property to which the conspirators were not entitled; (d) to provide preferential treatment to COMPANY A and JANOSKE in the awarding of contract work and maintenance agreements; and (e) to conceal the nature and purpose of the scheme and artifice to defraud.

8. The conspiracy was executed in the following manner:

   a. JANOSKE and COMPANY A provided things of value to CARNEY for numerous years, including appliances and outdoor kitchen equipment and supplies; free residential plumbing and HVAC services and supplies; and approximately three client appreciation fishing trips sponsored by COMPANY A for certain of COMPANY A's clients;

   b. In exchange for receiving things of value from JANOSKE and COMPANY A, CARNEY provided JANOSKE and COMPANY A with preferential treatment in the awarding of Union A's HVAC and plumbing contracts;

   c. In or about 2013, CARNEY solicited a bid proposal from COMPANY A for an air conditioning project at Union A's headquarters at approximately the same time that CARNEY requested that COMPANY A supply and install an outdoor kitchen at CARNEY's house;

   d. With CARNEY'S knowledge, COMPANY A's bid proposal for the air conditioning project was inflated to cover the cost of CARNEY's personal project as well as plumbing and HVAC work previously performed at CARNEY's house in 2012 and 2013;

   e. In or about June 2014, during a competitive bid process for all of Union A's building maintenance and service agreements, CARNEY and other members of the

conspiracy cooperated with each other in order to submit a bid proposal from another HVAC company that was deliberately higher than the proposal that COMPANY A provided to Union A; and

    f.    CARNEY and other members of the conspiracy attempted to conceal the scheme by, among other things, generating false or inflated cost proposals and invoices, communicating by personal e-mail, and providing false information to Union A or by knowing that such attempts to conceal were being undertaken by the other.

The co-conspirators took the following steps, among others, to further the conspiracy:

9.    Between in or about May 2012 and May 2013, CARNEY requested and received free plumbing and HVAC supplies and services from COMPANY A for CARNEY's house (totaling approximately $7,058.73). COMPANY A billed Union A for the supplies and services, which Union A paid.

10.    In or about July 2012, CARNEY requested and received free HVAC supplies and services from COMPANY A for CARNEY's relative (totaling approximately $2,993.75). COMPANY A billed Union A for the supplies and services, which Union A paid.

11.    Between in or about April 2013 and in or about May 2013, CARNEY requested that COMPANY A purchase kitchen supplies for CARNEY's patio (totaling approximately $12,283.16). COMPANY A billed Union A for the kitchen appliances.

12.    On or about June 5, 2013, PERSON B sent an e-mail to CARNEY in the Eastern District of Virginia attaching COMPANY A's cost proposal to purchase and install the air conditioning unit and four exhaust fans at Union A's headquarters. CARNEY knew at the time that COMPANY A's cost proposal (totaling $146,932) was inflated to include the costs associated with the outdoor kitchen appliances.

13. On or about June 24, 2013, CARNEY, on behalf of Union A, accepted COMPANY A's cost proposal for the air conditioning project.

14. On or about June 26, 2013, CARNEY sent and caused to be sent e-mails with PERSON B about a proposed delivery date for a free refrigerator for CARNEY's house. After applying a $1,001 discount, the refrigerator cost approximately $2,633.39.

15. On or about July 12, 2013, CARNEY, on behalf of Union A, approved a COMPANY A invoice (totaling $48,927.44) for the air conditioning project, which Union A paid.

16. Between on or about September 4, 2013 and on or about September 27, 2013, CARNEY sent and caused to be sent e-mails with PERSON B about replacing cabinets for CARNEY's outdoor kitchen (totaling approximately $1,734.69) and obtaining a county gas permit and a home inspection. COMPANY A billed Union A for the replacement costs.

17. On or about October 9, 2013, CARNEY, on behalf of Union A, approved a COMPANY A invoice (totaling approximately $97,959.56) for the air conditioning project, which Union A paid.

18. Between on or about April 30, 2014 and on or about June 26, 2014, CARNEY sent and caused to be sent e-mails with PERSON B about having COMPANY A purchase and replace a high-end faucet in CARNEY's house (totaling approximately $1,198.86).

C. **Conclusion**

19. This statement of facts includes those facts necessary to support the plea agreement between the defendant and the United States. It does not include each and every fact known to the defendant or to the United States, and it is not intended to be a full enumeration of all of the facts surrounding the defendant's case.

20. The actions of the defendant, as recounted above, were in all respects knowing and deliberate, and were not committed by mistake, accident, or other innocent reason.

          Respectfully submitted,

          G. Zachary Terwilliger
          United States Attorney

By: *[signature]*
          Edward P. Sullivan
          Special Assistant United States Attorney (LT)
          United States Attorney's Office
          2100 Jamieson Avenue
          Alexandria, Virginia 22314
          Tel: 703-299-3700
          Edward.P.Sullivan@usdoj.gov

After consulting with my attorney and pursuant to the plea agreement entered into this day between the defendant, Michael J. Carney, and the United States, I hereby stipulate that the above Statement of Facts is true and accurate, and that had the matter proceeded to trial, the United States would have proved the same beyond a reasonable doubt.

_____
Michael J. Carney
Defendant

I am Michael J. Carney's attorney. I have carefully reviewed the above Statement of Facts with him. To my knowledge, his decision to stipulate to these facts is an informed and voluntary one.

_____
Patrick N. Anderson, Esq.
Attorney for Michael J. Carney